UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| **CORY L. CHENAULT, SR.,**<br>    Plaintiff,<br><br>V.<br><br>**RANDSTAD USA MANUFACTUING AND LOGISTICS,** *et al.***,**<br>    Defendants. | CIVIL NO. 5:18-CV-276-KKC<br><br><br>**ORDER AND OPINION** |

\*\*\*\*\*\*

This matter is before the Court on the Defendants' Joint Motion to Enforce the October 1, 2018 Settlement Agreement. (DE 60). Defendant Randstad USA Manufacturing and Logistics has also filed a Motion to Strike Cory Chenault's sur-reply to the Motion to Enforce. (DE 70). For the reasons stated below, the Motion to Strike (DE 70) is **GRANTED** and the Motion to Enforce (DE 60) is **GRANTED IN PART AND DENIED IN PART**.

### I.  BACKGROUND

Cory Chenault filed suit pro se against Randstad USA Manufacturing and Logistics ("Randstad") and Saddle Creek Logistic Services ("Saddle Creek") seeking damages for employment related disputes. (DE 1 at 3.) The parties convened for a Settlement Conference on October 1, 2018 in front of United States Magistrate Judge Gregory Wehrman. (DE 51). The minute entry for the Settlement Conference states that "[t]he parties have reached a settlement agreement and plaintiff is in the process of reviewing release documents tendered by defendants." Judge Wehrman further ordered that "[o]n or before OCTOBER 24, 2018 parties shall advise the Court if the settlement documents have been executed; [and] [o]n or

1

before NOVEMBER 2, 2018 the parties shall submit the signed stipulation of dismissal to Chief Judge Caldwell absent which the Court will enter its own dismissal order." (DE 51.)

Following the Settlement Conference, Chenault contacted one of the Defendants and stated that he was entitled to more money. (DE 58 at 8.) On October 23, 2018, the Court still had not received signed release documents from the parties. (DE 58 at 2-3.) Further, the Court and the Defendants were having difficulty communicating with Chenault. (DE 58 at 2-3.) Accordingly, the Court held a telephone conference with the parties to determine the status of the case. (DE 55). The minute entry for the telephone conference states that—

> At the conclusion of the October 1, 2018 settlement conference the parties reached a monetary agreement and plaintiff asked for additional time to review the release documents presented to him by defense counsel. The Court directed Mr. Chenault to consult with an attorney regarding the release document and to report back by October 24. Unfortunately Mr. Chenault failed to consult with counsel and has orally requested a second settlement conference. After adequate discussion with counsel and Mr. Chenault, accordingly;
> IT IS SO ORDERED:
>   1. Plaintiff's oral request for a second settlement conference is DENIED;
>   2. This file is returned to the chambers of Chief Judge Karen Caldwell for further order. (DE 55.)

The Court has reviewed the transcript from the telephone conference. (DE 58). Counsel for Saddle Creek, Kevin Roberts, explained that he attempted to contact Chenault to determine the status of the release documents. (DE 58 at 2-3.) After several failed attempts, Roberts was finally able to speak with Chenault, who stated that he believed he was entitled to more money and requested another settlement conference. (DE 58 at 2-9.) During the telephone conference, Judge Wehrman stated—

> I did speak with Mr. Chenault yesterday…he basically said to me the same thing he said to Kevin Roberts; that he wanted to reconvene the settlement conference. I reminded him that we had reached a final settlement agreement of $3,600, and his reply was that I don't think Randstad paid enough in this case. (DE 58 at 4.)

Judge Wehrman later reiterated "as far as I'm concerned, I believe that you did have a settlement on the monetary aspect of the case." (DE 58 at 5.) He further explained that there

2

was no reason to conduct another settlement conference because the parties had already had one. (DE 58 at 5.) Chenault responded, "I feel that we would need another settlement conference because I wasn't pleased with the settlement nor the contract." (DE 58 at 5.) Judge Wehrman then asked Chenault if he had complied with the Court's order to contact a lawyer concerning the release documents. (DE 58 at 6.) Chenault responded that he did not, and when asked why, he stated "I didn't really agree with the contract so I – you know, I know you're not representing me. It's pretty much that I didn't agree with the contract." (DE 58 at 6.)

Chenault went on to state that during his conversation with Roberts, Roberts told him that his client was not "pleased with the contract" either. (DE 58 at 7.) Roberts replied that Chenault's characterization of their conversation was inaccurate. (DE 58 at 7.) Chenault then stated "[s]o you was [*sic*] please with the contract? Is that what you're saying now?" Judge Wehrman replies "[t]he contract, I believe he's referring to the release." Roberts then went on to explain the conversation he had with Chenault again. Roberts stated that he told Chenault that his clients were not likely to entertain another settlement conference, but that he never stated that his clients were not "pleased about the contract." (DE 58 at 8.) Chenault then asked why the Defendants moved for an extension. (DE 58 at 8-9.) The record indicates that Chenault was confused by the nature of the extension granted by the Court. The Court had granted an extension to the Defendants to **answer the Complaint**. (DE 57). Defense counsel responded to Chenault's question by stating: "the request [was] for additional time to answer your complaint…so that the parties could give you an opportunity to consult with an attorney regarding the agreement. That way, if we didn't have to file an answer, we could wait on that until after the October 24th date." (DE 58 at 9.) Chenault replied—appearing to still not understand the nature of the extension—"[y]eah, I didn't need an extension. I just needed to get in touch with [defense counsel] before now that I wasn't agreeing to the

3

contract. I didn't need an extension. So I guess there wasn't no necessary need for no extension. Is that what you think [*sic*]?" (DE 58 at 9.) The Court then interjected and stated—

> All right. Mr. Chenault, we're not going to resolve this case, and we're not going to have another settlement conference because we already had one. And you did reach a monetary agreement with them at the time. The only issue outstanding was the terms of the release, which you did not have an attorney review, which is what I strongly suggested that you do. In fact, I put it in the order. So I am simply going to indicate to the trial judge in this case that the parties have concluded the settlement negotiations, there remains a dispute as to the terms of the release, and I will send the file back to her, Judge Caldwell, and she will take the case from there. (DE 58 at 9-10.)

Chenault responded "[a]ll right. Thank you very much. Have a good day." (DE 58 at 10.)

Following this conversation, the Defendants jointly filed a Motion to Enforce the settlement agreement. (DE 60). At Chenault's request, the Court granted him an extension to respond to the Defendants' Motion. (DE 67). The Court has reviewed the record and briefings tendered by the parties. The Defendants assert that the parties reached a verbal agreement at the Settlement Conference to pay $3,600 to Chenault in exchange for a release of claims against them. (DE 60 at 1.) They request that the Court issue an order requiring Chenault to sign (1) a written agreement memorializing the verbal contract reached at the Settlement Conference and (2) a stipulation of dismissal with prejudice. (DE 60-1 at 7.) Chenault's response asserts that "during the conclusion of mediation…[he] express[ed] how he wasn't in agreement and/or oppose[ed] the settlement." (DE 58 at 2.) He further stated that at the telephone conference he told Judge Wehrman and the Defendants that he "wasn't in agreement with settlement nor was he signing the agreement and/or consenting to it." (DE 58 at 2.) For reasons further explained below, the Court finds that the parties entered into a verbal contract at the Settlement Conference on October 1, 2018.

Chenault also filed a sur-reply to the Defendants' Motion to Enforce. (DE 69). Consequently, Defendant Randstad filed a Motion to Strike that sur-reply. (DE 70). As further explained below, that Motion (DE 70) will be granted.

4

## II. ANALYSIS

**A. The Court will not consider Chenault's sur-reply in deciding whether to grant the Defendants' Motion to Enforce.**

Before addressing the Defendants' Motion to Enforce the October 1, 2018 Settlement Agreement, the Court must determine which documents will be considered in rendering its decision. Accordingly, the Court must first decide whether Randstad's Motion to Strike Plaintiff's Sur-Reply (DE 70) should be granted.

In the Eastern District of Kentucky, "a motion is submitted to the Court for decision…after the reply is filed, or the time for filing the response or reply has expired." LR 7.1(g). Neither the Local Rules nor the Federal Rules of Civil Procedure permit litigants to file sur-replies. Accordingly, such filings are not permitted absent leave of Court. *Vaughn v. Hawkins*, 5:14-cv-00099, 2018 WL 2210873, at *2 (W.D. Ky. May 14, 2018) (citing *Key v. Shelby Cty.*, 551 F. App'x 262, 265 (6th Cir. 2014); *Eberhard v. Chicago Title Ins. Co.*, No. 1:11-cv-834, 2011 WL 12756822, at *2 (N.D. Ohio Jan. 8, 2014); LR 7.1. Generally, leave is only granted where new arguments or evidence were raised for the first time in the reply. *Key*, 551 F. App'x at 265. The presiding district court is afforded broad discretion in deciding to allow a party to file a sur-reply. *Key*, 551 F. App'x at 264.

Chenault did not seek leave of Court to file his sur-reply, and the Defendants did not raise any new arguments in their reply brief. Moreover, Chenault's sur-reply makes the same arguments as his initial response and otherwise only contains irrelevant assertions unrelated to enforcement of a settlement agreement. Thus, the filing of his sur-reply was neither necessary nor appropriate. *See Johnson v. Slone*, No. CV 7:16-274-KKC, 2018 WL 1402376 (E.D. Ky. Mar. 20, 2018). Accordingly, Randstad's Motion to Strike Plaintiff's Sur-Reply (DE 70) is granted.

### B. The Court finds that the parties reached a verbal agreement to settle at the October 1, 2018 Settlement Conference.

A district court has broad, inherent authority to enforce a settlement agreement in litigation pending before it, even if the agreement has not been reduced to writing. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000); *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985). Settlement agreements may be subject to summary enforcement if: (1) the court has subject matter jurisdiction over the controversy stemming from the settlement agreement; (2) the parties agreed on the material terms of the settlement; and (3) the agreement was clear and unambiguous, and no issue of fact is present. *Covington v. Lord Corp.*, No. 1: 16-CV-00093-GNS, 2017 WL 9325797, at *1 (W.D. Ky. Mar. 29, 2017), report and recommendation adopted, No. 116CV00093GNSHBB, 2017 WL 2304314 (W.D. Ky. May 26, 2017). If the court finds that settlement was agreed to, the court must enforce the contract as it was agreed to and is not permitted to alter the terms of the agreement. *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 687 F.2d 626, 629 (2d Cir.1982).

Here, the only remaining cause of action is a Fair Labor Standards Act (FLSA) claim seeking damages for unpaid wages and overtime. (DE 60-1 at 3.) Accordingly, this Court has federal question jurisdiction over the claim.

A valid agreement to settle, whether oral or written, is a contract, and therefore is governed by contract law. *See Covington*, 2017 WL 2304314 at *2. Federal common law of contracts controls this settlement agreement, although the result would be the same if considered under state law. *See Nicklin v. Henderson*, 352 F.3d 1077, 1080 (6th Cir. 2003) ("Federal common law controls the validity of a release of a federal cause of action."); *Covington,* 2017 WL 2304314 at *2; *Brewer v. Rogers*, No. CIV.A. 08-23-JBC, 2009 WL 307778, at *2 (E.D. Ky. Feb. 5, 2009); *Huffer v. Herman*, 168 F. Supp. 2d 815, 824 (S.D. Ohio

2001). The elements of contract formation are well-established and rather consistent across jurisdictions. *Id.*

Contract formation requires an offer and acceptance. Restatement Second of Contracts § 22 (1981). Valid settlement agreements further require reasonably certain terms and a meeting of the minds. Restatement Second of Contracts §§ 24, 33. "Before enforcing a settlement agreement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645–46 (6th Cir. 2001).

Generally, an evidentiary hearing is necessary to determine whether an agreement was reached in situations where material facts are disputed. *Id.* at 646. However, an evidentiary hearing is not necessary where no issue of fact is present, and the agreement is clear and unambiguous. *Id.* Moreover, if a judge conducting a settlement conference recollects that an agreement was reached, that recollection strongly supports a finding of an enforceable agreement without the need for an evidentiary hearing. *Lynch, Inc. v. SamataMason, Inc.*, 279 F.3d 487, 490-92 (7th Cir. 2002); *Woods v. Carey*, No. 204CV1225MCEACP, 2015 WL 7282749, at *2 (E.D. Cal. Nov. 18, 2015), report and recommendation adopted, No. 204CV1225MCEACP, 2016 WL 11440086 (E.D. Cal. Jan. 15, 2016), aff'd, 715 F. App'x 694 (9th Cir. 2018). In situations where the settlement conference is held off the record,[1] "the parties assume the risk that the judge's recollection of the events might differ from their own." *Elustra v. Mineo*, 595 F.3d 699, 708 (7th Cir. 2010).

The Settlement Conference in this case was conducted off the record. However, Judge Wehrman entered a minute entry order one day after the conference, which provides his

---

[1] Judges presiding over conferences where a settlement is reached are encouraged to dictate to a court reporter their understanding of the settlement and its terms at the conclusion of the conference. *Gevas v. Chosh*, 566 F.3d 717, 719 (7th Cir. 2009). Additionally, the judge should have the parties confirm for the record their assent to those terms. *Id.*

7

recollection of the outcome of the Settlement Conference. In his Order, he summarized as follows:

> A settlement conference was held on October 1, 2018 with the following appearances: Cory L. Chenault, pro se plaintiff; Honore' Hishamunda, counsel for defendant Randstad; Laurie Reed, a representative of defendant Saddle Creek and Kevin Roberts, its counsel. The parties have reached a settlement agreement and plaintiff is in the process of reviewing release documents tendered by defendants. After discussion with and between all of the participants, accordingly;
> IT IS SO ORDERED:
> 1. On or before OCTOBER 24, 2018 parties shall advise the Court if the settlement documents have been executed;
> 2. On or before NOVEMBER 2, 2018 the parties shall submit the signed stipulation of dismissal to Chief Judge Caldwell absent which the Court will enter its own dismissal order. (DE 51.)

In addition, the minute entry following the telephone conference post-settlement and the transcript of that conversation further divulge Judge Wehrman's recollection of the parties' settlement negotiation. The minute entry for the telephone conference states:

> On October 23, 2018 a conference call was held with the following appearances: plaintiff Cory L. Chenault, Sr., Honore' Hishamunda for defendant Randstad; Kevin Roberts for defendant Saddle Creek. The proceedings were recorded by official court reporter Joan Averdick. At the conclusion of the October 1, 2018 settlement conference the parties reached a monetary agreement and plaintiff asked for additional time to review the release documents presented to him by defense counsel. The Court directed Mr. Chenault to consult with an attorney regarding the release document and to report back by October 24. Unfortunately Mr. Chenault failed to consult with counsel and has orally requested a second settlement conference. After adequate discussion with counsel and Mr. Chenault, accordingly;
> IT IS SO ORDERED:
> 1. Plaintiff's oral request for a second settlement conference is DENIED;
> 2. This file is returned to chambers of Chief Judge Karen Caldwell for further order. (DE 55.)

Further, in the transcript of the telephone conference, Judge Wehrman makes the following statements regarding his recollection of the Settlement Conference:

(1) I did speak with Mr. Chenault yesterday…he basically said to me the same thing he said to Kevin Roberts; that he wanted to reconvene the settlement conference. I reminded him that we had reached a final settlement agreement of $3,600, and his reply was that I don't think Randstad paid enough in this case. (DE 58 at 4.)

(2) As far as I'm concerned, I believe that you did have a settlement on the monetary aspect of the case." (DE 58 at 5.)

8

(3) I don't see any need to [conduct another settlement conference] since we've already had one. (DE 58 at 9.)

(4) All right. Mr. Chenault, we're not going to resolve this case, and we're not going to have another settlement conference because we already had one. And you did reach a monetary agreement with them at the time. The only issue outstanding was the terms of the release, which you did not have an attorney review, which is what I strongly suggested that you do. In fact, I put it in the order. So I am simply going to indicate to the trial judge in this case that the parties have concluded the settlement negotiations, there remains a dispute as to the terms of the release, and I will send the file back to her, Judge Caldwell, and she will take the case from there. (DE 58 at 9-10.)

Consistent with Judge Wehrman's recollection, the Defendants assert that they accepted Chenault's verbal offer to release his claims in exchange for three thousand six hundred dollars ($3,600) and a neutral reference from Randstad. (DE 60 at 1.) Chenault is now trying to convince the court that he did not offer to settle his case for $3,600 and that no agreement was reached at the Settlement Conference. (*See* DE 65.) However, there is a paucity of contemporaneous evidence to corroborate his assertions. In fact, Chenault's statements during the telephone conference and response to the Defendants' Motion actually allude to a verbal agreement between the parties.

During the Settlement Conference, Chenault referred to an agreement between the parties when he stated: "I feel that we would need another settlement conference because I wasn't pleased with *the settlement nor the contract*." (emphasis added.) (DE 58 at 5.) Additionally, after Judge Wehrman stated that Chenault did reach a monetary agreement with the Defendants at the Settlement Conference and that the only outstanding issue is the terms of the release, Chenault responded "[a]ll right. Thank you very much. Have a good day." (DE 58 at 10.) Chenault did not object to Judge Wehrman's statement nor did he express any disagreement with his recollection.

Further, Chenault's response to the Defendants' Motion also alludes to the existence of a verbal agreement. Chenault's response states that "during the conclusion of mediation, [he]

9

express[ed] how he wasn't in agreement and/or oppose[ed] the settlement." (DE 65 at 2.) He then states "[t]he Defendants has argue and cited cased where oral agreement was made along with a signature, and the plaintiff was wrong by the defendant, and they were hold in open courts. The cases cited by defendants has no merit in relations to this issue. [*sic*]" (DE 65 at 3.) The Court finds that these statements allude to the existence of a verbal agreement. Chenault's purported confusion regarding the binding force of verbal agreements or the difference between a contract and release documents is of no consequence. Pro se litigants are bound to the law, and "[a] willfully unrepresented plaintiff volitionally assumes the risks and accepts the hazards which accompany self-representation." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000). Moreover, the existence of a valid oral contract reached outside open court "is not diminished by the fact that the parties have yet to memorialize the agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001); *Kukla v. Nat'l Distillers Prod. Co.*, 483 F.2d 619, 621 (6th Cir. 1973) (observing the power of a trial court to enforce a settlement agreement when the agreement is not arrived at in the presence of the court nor reduced to writing.) In such contracts, where the material terms of a settlement are agreed to and all that remains is to memorialize the terms of the release in writing, the parties are bound by the terms of their oral agreement. *See id.*

Although the Sixth Circuit generally requires an evidentiary hearing where there is a dispute as to whether a settlement agreement was reached, the Court finds conducting an evidentiary hearing in this instance would be pointless. The record clearly depicts both parties' recollections as to whether an agreement was reached at the Settlement Conference. Further, the record clearly details Judge Wehrman's recollection of the Settlement Conference. It would be wasteful to conduct an evidentiary hearing for the purpose of hearing

testimony regarding the parties' and presiding judge's recollections of the Settlement Conference when those recollections are clearly evidenced in the record.

Every person at the Settlement Conference, with the exception of Chenault, explicitly recalls that a global settlement was reached. Global settlements include agreements where a party agrees to release claims in exchange for a sum of money. *See Elustra*, 595 F.3d at 709. "Parties often negotiate and agree to a global settlement," and the terms of such agreements are sufficiently definite and certain, even where the parties intend to memorialize their agreement in writing later. *Id. See RE/MAX Int'l, Inc.*, 271 F.3d at 646. In addition to the recollections Judge Wehrman—who notably is a completely neutral party—and the Defendants, Chenault's own response brief and statements during the telephone conference allude to the existence of a verbal contract. Chenault's response brief references a verbal contract when he discloses his subjective, mistaken belief that such contracts cannot be binding when made without a signature and outside open court. (DE 65 at 3.) And during the telephone conference, he does not object or even contest Judge Wehrman's recollection that a monetary agreement was reached. In fact, he responds "[a]ll right. Thank you."—seemingly in agreement with Judge Wehrman's recollection. (DE 58 at 10.)

The record unequivocally supports the existence of a verbal contract, and Chenault has provided the Court with no basis to doubt Judge Wehrman's recollection of the Settlement Conference. There is also no evidence anywhere in the record to suggest that executing the release documents was a condition precedent to the agreement. After considering the positions of each party and Judge Wehrman's recollection, the Court finds that an agreement has been reached as to all material terms. At the Settlement Conference, the parties reached a verbal agreement, in which the Defendants would pay $3,600 to Chenault and provide him with a neutral reference in exchange for the dismissal of his remaining FLSA claim. The Court concludes that the parties framed their settlement in global terms, which are

adequately supported by the record. The agreement is clear and unambiguous, and no issue of fact is present. As such, the parties will be bound to their agreement.

### III. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) Randstad's Motion to Strike Plaintiff's Sur-Reply (DE 70) is **GRANTED**.

(2) The Defendants' Joint Motion to Enforce the October 1, 2018 Settlement Agreement (DE 60) is **GRANTED IN PART AND DENIED IN PART**. To the extent that the Motion seeks enforcement of the verbal agreement reached at the Settlement Conference on October 1, 2018, it is **GRANTED**. To the extent that the Motion seeks an Order from this Court requiring Chenault to sign a written agreement and stipulation of dismissal, it is **DENIED**.

(3) The Defendants shall tender a payment of three thousand six hundred dollars ($3,600) via certified mail to Cory L. Chenault Sr. by sending it to the address listed in the Court's record. Payment shall be tendered no later than May 24, 2019.

(4) Proof of tendered payment shall be filed in the record.

(5) Upon proof that the payment was tendered by certified mail to the Plaintiff, the Court will dismiss the case with prejudice.

Dated May 20, 2019

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY